IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-539-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| $115,413.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| RAMON L. LYON, | ) | |
| | ) | |
| Claimant. | ) | |

On October 9, 2020, the United States of America ("United States" or "plaintiff") filed an action in rem for $115,413.00 in United States currency against Ramon L. Lyon ("Lyon" or "claimant") [D.E. 1]. On April 15, 2021, the parties submitted a Rule 26(f) report [D.E. 17]. On May 21, 2021, Lyon filed a motion to dismiss for failure to state a claim [D.E. 25]. November 18, 2021, the court denied the motion to dismiss [D.E. 35]. On November 29, 2021, Lyon answered [D.E. 36]. On June 24, 2022, Lyon filed a motion to suppress [D.E. 43] and a memorandum in support [D.E. 44]. On September 29, 2022, the United States filed a motion for extension of time to complete discovery [D.E. 58]. On October 3, 2022, the court granted the extension of time and stayed discovery [D.E. 59, 60]. On February 7, 2023, the United States moved to limit testimony of TSA employees [D.E. 69]. On March 28, 2023, the court denied Lyon's motion to suppress and denied as moot the United States' motion to limit testimony [D.E. 75].

On May 19, 2023, the United States moved to reopen discovery [D.E. 76]. On May 22, 2023, the court reopened discovery [D.E. 77]. On August 16, 2023, the United States moved to compel

discovery [D.E. 78] and filed a memorandum in support [D.E. 79]. On September 21, 2023, the court granted the motion to compel [D.E. 81]. On October 16, 2023, the United States filed a motion for extension of time to complete discovery and asked the court to strike Lyon's claim [D.E. 82]. On October 17, 2023, the court extended discovery [D.E. 83]. On October 18, 2023, the United States moved for sanctions [D.E. 84], asked the court to strike Lyon's claim, and filed a memorandum in support [D.E. 85]. On November 3, 2023, the United States filed a supplemental memorandum in support [D.E. 86]. On November 20, 2023, Lyon responded in opposition [D.E. 90] and filed a memorandum in support [D.E. 91]. As explained below, the court grants the United States' motion for sanctions but declines to strike Lyon's claim.

I.

On June 3, 2020, Lyon entered security at Raleigh-Durham International Airport ("RDU") in Morrisville, North Carolina, to board a flight to Los Angeles. See [D.E. 1-1] ¶ 9.[1] Lyon had booked no return flight and had no planned accommodations in Los Angeles. See id. A TSA employee monitoring the x-ray machine identified one of Lyon's bags for further inspection. See id. After searching Lyon's bag, the United States seized $115,413.00 in United States currency hidden in the bag. See id. at ¶¶ 9–11, 19. The bag and the money smelled of marijuana. See id. at ¶¶ 10–11. Lyon claimed that the currency was from Phish Lounge, an internet sweepstakes business, which he operated. See id. at ¶ 13.

Following this seizure, RDU police interviewed Lyon. See id. at ¶ 12. During the interview, Lyon misrepresented: (1) the amount of currency he was carrying, (2) the purpose of his travel, and

---

[1] On March 14, 2024, this court granted the United States' motion for leave to amend its complaint. See [D.E. 102]. The court uses the facts in the original complaint for the purposes of this motion only.

2

(3) his role with Phish Lounge. See id. at ¶¶ 12–15. Lyon first told police he was traveling to Los Angeles to purchase land. See id. at ¶ 12. He later changed the story and said he was traveling to Los Angeles to purchase video poker machines. See id. at ¶ 14. He was unable to tell RDU police, however, who was selling the machines or provide any information concerning the specifications of the video poker machines. See id.

Because Lyon had no employment history in North Carolina and an extensive criminal record, including multiple drug trafficking convictions, the Department of Homeland Security concluded that there was probable cause that the $115,413 was an intended payment for a controlled substance or the proceeds from a controlled substance sale. See id. at ¶¶ 16–19; [D.E. 54] 2, 13–14; [D.E. 54-10] 2–3. Thus, the United States filed a complaint for the seized currency. See [D.E. 1].

On April 15, 2021, the parties submitted a Rule 26(f) report. See [D.E. 17]. After numerous requests for extension of discovery, on August 16, 2023, the United States moved to compel discovery. See [D.E. 78]. The court granted the motion to compel and ordered Lyon to answer interrogatory number 20 and requests for production numbers 21, 22, and 23 by October 6, 2023. See [D.E. 81] 3–4. On October 18, 2023, due to Lyon's limited responses, the United States requested sanctions and asked the court to strike Lyon's claim. See [D.E. 84, 85].

Interrogatory number 20 asked Lyon to identify "by name, address, . . . telephone number . . . , [and] role[]" everyone involved with the sweepstakes business and their "responsibilities" from January 1, 2018, to December 31, 2020. [D.E. 86-1] 1. On November 2, 2023, Lyon responded: Ramon Lyon, Denise Williamson, Marvin Williams (security), Bobby Richardson (cashier/shift supervisor), Marquita Ratliff (cashier), and Keosha Griffin (cashier). See id. at 2. In a separate response, Lyon included Kenny, Seneca Green, and Dejuan Lyon. See [D.E. 86-2] 2. Lyon provided phone numbers for himself, Denise Williamson, and Dejuan Lyon and had

3

"[n]o current phone [number]" for the other six individuals. Id. He provided no addresses. Lyon's attorney asserts that on July 29, 2023, Lyon provided these names to the United States, but he could not provide a wet signature from Lyon until November 2, 2023, due to Lyon's work schedule. See [D.E. 91] 7–11.

Request for production number 21 asked for complete "personal and/or business income tax returns" filed on behalf of Lyon and his sweepstakes business from 2018 to 2020. [D.E. 86-1] 3. On November 2, 2023, Lyon responded that the United States had not met its burden to prove that the tax returns were relevant and that he provided the necessary information about the sweepstakes business through invoices. See id. at 3, 8–21. Later, Lyon authorized the release of his personal tax returns. See [D.E. 86-2] 3, 8.

Request for production number 22 requested payroll records for the sweepstakes business. See [D.E. 86-1] 3. Lyon responded that renovations destroyed most of his records but that he produced the remaining documents. See id. Lyon said he would provide employee 1099 forms when he returned to Raleigh. See id. Lyon supplemented this response to say "Ramon Lyon did not manage payroll." [D.E. 86-2] 3. On November 20, 2023, Lyon said offering to provide 1099 forms was a mistake, and he would not provide 1099 forms. See [D.E. 91] 12 n.2.

Request for production number 23 requested ledgers and other similar records for the sweepstakes business documenting "wagers, plays, wins, losses" and other money paid by patrons. [D.E. 86-1] 3. On November 2, 2023, Lyon stated that he already provided this information. See id. at 3–4, 22–23.

II.

A party may seek sanctions against another party who disobeys a discovery order. See Fed. R. Civ. P. 37(b)(2)(A). Sanctions may include accepting the non-disobeying party's factual

4

interpretations, prohibiting the disobeying party from later using the disputed evidence, and "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v); see Rabb v. Amatex Corp., 769 F.2d 996, 999–1000 (4th Cir. 1985).

Courts evaluate four factors when considering sanctions under Rule 37: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would . . . be[] effective." S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) (quotation omitted); see Beach Mart, Inc. v. L&L Wings, Inc., 784 F. App'x 118, 123–24 (4th Cir. 2019) (unpublished); D'Orazio v. OSL Holdings, Inc., No. 5:16-CV-11, 2017 WL 2537243, at *2 (E.D.N.C. June 9, 2017) (unpublished). "Although, some courts require a showing of bad faith before imposing sanctions, the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of sanctions." Sampson v. City of Cambridge, 251 F.R.D. 172, 179 (D. Md. 2008); see Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001).

A court imposes Rule 37 sanctions "not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process." Aztec Steel Co. v. Fla. Steel Corp., 691 F.2d 480, 482 (11th Cir. 1982) (per curiam). Dismissal and default judgment are appropriate "where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules" governing discovery. Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989). Dismissal or default judgment is a drastic sanction. See id. Alternatively, "the trial court has broad discretion to permit [the factfinder] to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of

5

evidence." Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995). "While a finding of bad faith suffices to permit such an inference, it is not always necessary." Id.

In D'Orazio v. OSL Holdings, Inc., this court applied the four factors and concluded that dismissing the defendant's counterclaim was warranted as a sanction due to defendant's failure to provide initial disclosures and discovery responses the court ordered. See D'Orazio, 2017 WL 2537243, at *2 (incorporating by reference the analysis in D'Orazio v. OSL Holdings, Inc., No. 5:16-CV-11, 2017 WL 888225, at *2 (E.D.N.C. Mar. 6, 2017) (unpublished)). On the first factor, the court found that the defendant acted in bad faith by willfully refusing to participate in the lawsuit. See D'Orazio, 2017 WL 888225, at *2. On the second factor, the court found that the defendant's refusal to provide discovery had prejudiced plaintiff's ability to pursue the lawsuit. See id. On the third factor, the court noted that the defendant had filed a counterclaim and then essentially abandoned the case. See id. Finally, the court found less drastic sanctions inappropriate because the defendant had abandoned the case and was refusing to reply to the plaintiff's requests. See id. Upon defendant's failure to comply with this court's order to produce initial disclosures and discovery responses within the stated deadline, the court dismissed with prejudice the defendant's counterclaim and entered judgment in favor of plaintiff. See D'Orazio, 2017 WL 2537243, at *2.

Sanctions are appropriate. As for the first factor, Lyon acted in bad faith. As the alleged owner of an operating business, Lyon could have provided names, roles, addresses, telephone numbers, payroll records, and tax information for every employee involved with Lyon's allegedly legitimate sweepstakes business and provide the complete ledgers for gambling payouts. See [D.E. 86-2] 3, 8. He chose not to provide the information. Moreover, the court rejects Lyon's contention that he could not access a mailbox for over two months. See [D.E. 91] 9.

6

Lyon improperly withheld his personal and business tax returns. Lyon's counsel had Lyon's tax records and 1099 forms. See [D.E. 86] 3. Corporate tax returns are not privileged. See, e.g., Minter v. Wells Fargo Bank, N.A., 675 F. Supp. 2d 591, 597 (D. Md. 2009); E. Auto Distributors, Inc. v. Peugeot Motors of Am., Inc., 96 F.R.D. 147, 148 (E.D. Va. 1982). Personal tax returns are not privileged when (1) the tax return is relevant to the subject matter in dispute and (2) the requesting party cannot obtain the information in the tax return from other sources. See Susko v. City of Weirton, No. 5:09-CV-1, 2010 WL 3584425, at *3 (N.D.W. Va. Sept. 10, 2010) (unpublished), aff'd, 2010 WL 4554189 (N.D.W. Va. Nov. 3, 2010) (unpublished). The requested information concerning Phish Lounge's tax returns and Lyon's tax returns include information relevant to the $115,413, and the United States cannot obtain the information from other sources. Thus, the documents are discoverable.

Lyon argues that the invoices he produced prove that his sweepstakes business made over $115,413. See [D.E. 91] 12–13. These invoices, however, are not consistently numbered or formatted. See [D.E. 86-1] 8–21. Moreover, the question in this case is not whether Lyon's alleged business made at least $115,413 but whether a legitimate business gave him $115,413 to take to California on June 3, 2020, to purchase video poker machines. Furthermore, Lyon could have resolved any concerns about disclosing the corporate and personal tax returns with a protective order. Lyon never requested a protective order. Rather, Lyon authorized disclosure of his personal tax returns weeks after the deadline passed, showing that Lyon simply refused to produce the requested information in bad faith. See [D.E. 86-2] 3, 8. Similarly, despite having the 1099s in Raleigh, Lyon refused to timely produce them. See [D.E. 86] 3. Thus, Lyon acted in bad faith.

As for the second factor, Lyon has seriously prejudiced the United States through non-compliance. On April 15, 2021, the parties submitted a Rule 26(f) report. See [D.E. 17]. This

7

report placed Lyon on notice of discovery expectations. Lyon's refusal to provide basic information about his own and his alleged business's finances thwarted the United States' ability to develop its case, requiring numerous discovery deadline extensions. Thus, Lyon has seriously prejudiced the United States through non-compliance.

As for the third factor, the court needs to deter Lyon's non-compliance. It is troubling that Lyon and his counsel continuously asserted that documents were accessible and in their custody but simply refused to provide relevant documents.

As for the fourth factor, there are less drastic sanctions than striking Lyon's claim. Instead, the court will draw all adverse inferences against Lyon and make Lyon pay the reasonable attorneys' fees and costs of the motion for sanctions to the United States. The court also prohibits Lyon from using any documentation requested and not produced.

III.

In sum, the court GRANTS plaintiff's motion for sanctions [D.E. 84]. Not later than April 25, 2024, plaintiff shall submit its requested attorneys' fees and costs.

SO ORDERED. This _3_ day of April, 2024.

JAMES C. DEVER III
United States District Judge

8

Case 5:20-cv-00539-D    Document 105    Filed 04/03/24    Page 8 of 8