IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-539-D

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| $115,413.00 IN U.S. CURRENCY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| RAMON L. LYON, ) | |
| ) | |
| Claimant. ) | |

On October 9, 2020, the United States of America ("United States" or "plaintiff") filed an action in rem for $115,413.00 in United States currency [D.E. 1]. On May 21, 2021, Ramon L. Lyon ("Lyon" or "claimant") moved to dismiss the United States' amended complaint for forfeiture [D.E. 25]. On November 18, 2021, the court denied Lyon's motion to dismiss [D.E. 35].

On January 11, 2024, the United States moved for leave to amend its complaint to conform to the evidence by alleging two additional alternative theories of forfeiture [D.E. 92] and filed a memorandum in support [D.E. 94]. On February 22, 2024, Lyon opposed the motion to amend [D.E. 99]. On March 7, 2024, the United States replied [D.E. 100]. On March 14, 2024, the court granted the United States' motion for leave to amend its complaint [D.E. 102]. On the same day, the United States filed its amended complaint for forfeiture [D.E. 103, 103-1].

On May 28, 2024, Lyon moved to dismiss the United States' amended complaint for forfeiture [D.E. 113] and filed a memorandum in support [D.E. 114]. On June 11, 2024, the United

States responded in opposition [D.E. 115]. As explained below, the court denies Lyon's motion to dismiss.

I.

On June 3, 2020, Lyon entered security at Raleigh-Durham International Airport ("RDU") in Morrisville, North Carolina, to board a flight to Los Angeles. See [D.E. 103-1] ¶ 9. Lyon had booked no return flight and had no planned accommodations in Los Angeles. See id. A TSA employee monitoring the x-ray machine identified one of Lyon's bags for further inspection. See id. After searching Lyon's bag, the United States seized $115,413.00 in United States currency hidden in the bag. See id. at ¶¶ 9–15, 33. The bag and the money smelled of marijuana. See id. at ¶¶ 10–11. Lyon claimed that the currency was from Phish Lounge, an internet sweepstakes business, which he operated. See id. at ¶ 13.

Following this seizure, RDU police interviewed Lyon. See id. at ¶ 12. During the interview, Lyon misrepresented: (1) the amount of currency he was carrying, (2) the purpose of his travel, and (3) his role with Phish Lounge. See id. at ¶¶ 12–15. Lyon first told police he was traveling to Los Angeles to purchase land. See id. at ¶ 12. He later changed the story and said he was traveling to Los Angeles to purchase video poker machines. See id. at ¶ 14. He was unable to tell RDU police, however, who was selling the machines or provide any information concerning the specifications of the video poker machines. See id.

Because Lyon had no employment history in North Carolina and an extensive criminal record, including multiple drug trafficking convictions, the Department of Homeland Security concluded that there was probable cause that the $115,413 was an intended payment for a controlled substance or the proceeds from a controlled substance sale. See id. at ¶¶ 16–18, 33;

2

[D.E. 54] 2, 13–14; [D.E. 54-10] 2–3. Thus, the United States filed a complaint for the seized currency. See [D.E. 1].

On January 11, 2024, based on belated discovery responses from Lyon, and deposition testimony from Lyon and his fiancée concerning the Phish Lounge business, the United States moved for leave to amend its complaint to add two additional, alternative theories of forfeiture. See [D.E. 92] 1–2. After the Department of Homeland Security reviewed that evidence, it concluded that there was probable cause that the seized currency derived from proceeds traceable to specified unlawful activity, including an illegal gambling business, or was used in the operation of an illegal gambling business. See [D.E. 103-1] ¶¶ 30–33.

## II.

Lyon moves to dismiss the action under Rules G(8)(b) and G(2)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions for the Federal Rules of Civil Procedure. See [D.E. 113] 1. "A claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b)," and "[t]he sufficiency of the complaint is governed by Rule G(2)." Fed. R. Civ. P. Supp. R. G(8)(b)(i)–(ii). Under Rule G(2)(f), the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f); see United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002); United States v. $40,000.00 in U.S. Currency, No. 5:17-CV-398, 2018 WL 2371098, at *2 (E.D.N.C. May 24, 2018) (unpublished); United States v. $67,040.00, in U.S. Currency, No. 5:14CV75, 2015 WL 1418039, at *3–4 (W.D.N.C. Mar. 27, 2015) (unpublished).

Lyon contends that the amended complaint for forfeiture "fails to set forth facts that could supply any connection between the money seized and a controlled substance offense" as detailed

3

in Lyon's first motion to dismiss. [D.E. 113] 1. Lyon also argues that the United States' declaration only makes speculative allegations linking the seized money to drug activity. See [D.E. 114] 4. The court already rejected these arguments concerning the United States' theory of forfeiture predicated on controlled substance offenses. See [D.E. 35]. Lyon does not identify any factual, procedural, or other basis for revisiting that ruling concerning the controlled substance offenses theory of forfeiture. Cf. Arizona v. California, 460 U.S. 605, 618 (1983) (describing the law-of-the-case doctrine); Graves v. Lioi, 930 F.3d 307, 318 (4th Cir. 2019) (same). Accordingly, the court again rejects Lyon's arguments concerning the controlled substance offense theory of forfeiture.

Lyon also contends that the amended complaint fails to provide a sufficient factual basis to support the United States' illegal gambling activity theories. See [D.E. 113] 1; [D.E. 114] 4. Lyon does not elaborate beyond his cursory statement. See [D.E. 114].

The court rejects Lyon's argument. Lyon insisted that the seized currency derived from gaming tables at the Phish Lounge. See [D.E. 103-1] ¶ 25; [D.E. 106] 1. Moreover, the United States' amended complaint alleges sufficient facts to support a reasonable belief that the Phish Lounge meets the federal requirements for an illegal gambling business. See [D.E. 103-1] ¶¶ 24, 26–32; [D.E. 115] 3–8; 18 U.S.C. § 1955. The United States' amended complaint cites deposition testimony where Lyon's fiancée admits that the fish tables were "all based on luck." [D.E. 103-1] ¶ 29 (cleaned up). Those types of games were illegal under North Carolina law during the relevant time period. See N.C. Gen. Stat. §§ 14-292, 14-295, 14-306, 14-306.1A, 14-306.4.

Lyon argues that the fish table operations were legal during the relevant time period because of a "judicial moratorium." [D.E. 114] 4; [D.E. 114-1]. The injunction that Lyon cites does not concern fish tables and was predicated on a finding that skill, knowledge, and dexterity

4

predominated over chance in playing certain video slot machines. See Gift Surplus, LLC v. State ex rel. Cooper, 380 N.C. 1, 5, 868 S.E.2d 20, 23–24 (2022). Thus, the United States has plausibly alleged that the seized currency derived from proceeds traceable to specified unlawful activity, including an illegal gambling business, or was used in the operation of an illegal gambling business. Accordingly, the court denies Lyon's motion to dismiss.

III.

In sum, the court DENIES claimant's motion to dismiss plaintiff's amended complaint [D.E. 113].

SO ORDERED. This 22 day of July, 2024.

JAMES C. DEVER III
United States District Judge